13511

DERRICK v. NORTH CAROLINA MUT. LIFE INS. CO.

(166 S. E., 502)

*Mr. N. J. Frederick,* for appellant,

*Messrs. R. Y. Kibler* and *Legare Bates,* for respondent,

November 14, 1932.

The opinion of the Court was delivered by Mr. JUSTICE STABLER.

This is an action for damages for an alleged fraudulent breach by the defendant company of a contract of insurance.

The complaint alleges that on December 21, 1931, the company issued and delivered a policy of insurance on the life of one Lillie Ruth Derrick in the sum of $200.00, the plaintiff being named as beneficiary; that the insured died

on December 26, 1931; and that thereafter the plaintiff surrendered the policy to the defendant upon its promise to pay to him at once the full amount of the insurance, but that after it got possession of the policy it refused to return it or to pay anything. Judgment for $3,000.00, actual and punitive damages, was demanded.

The defendant, answering, alleged that the policy was willingly turned over to it by the plaintiff for the payment to him of such sum as the company was liable for under its terms; that the insured died five days after the policy was issued, the cause of her death being given in the proofs of death, submitted by the plaintiff as a statement of the attending physician, as acute nephritis and bronchial pneumonia; and that the beneficiary, therefore, under the provisions of the policy, was entitled to only one-fourth of its face value or $50.00, and that that amount had been tendered him by the defendant in settlement of his claim.

The case was tried in the Richland County Court and resulted in a verdict for the plaintiff for $200.00 actual and $150.00 punitive damages.

Only two questions are presented by the appeal: (1) Did the trial Judge err in refusing defendant's motion for a directed verdict in plaintiff's favor for $50.00? (2) Was there error in overruling the defendant's motion for a directed verdict in its favor as to punitive damages?

The provision of the policy, pertinent to the issue, reads as follows: "If the death of the insured occurs during the first twelve months from date of this policy resulting from consumption, tuberculosis, pellagra, diseases of the heart or blood vessels, nephritis or disease of the kidney, cancer, paralysis or apoplexy, one-fourth of the amount will be paid, which would be payable under the policy conditions for death resulting from any other natural cause."

The following are the proofs of death furnished the defendant by plaintiff, as they appear in the record of the case:

"a. Undertaker's statement saying cause of death was broncho-pneumonia.

"b. Claimant's statement saying cause of death was broncho-pneumonia.

"c. Statement of attending physician as follows:

"Date of death? December 26, 1931.

"Cause of death? As follows: Acute nephritis and broncho-pneumonia with contributing cause of chronic pulmonary tuberculosis."

The appellant contends that the proofs of death furnished by plaintiff, when taken in connection with the provision of the policy quoted, left nothing to be submitted to the jury for its decision, as the benficiary was entitled to only $50.00, if to anything, and that the company had tendered him that amount. The trial Court, however, held that the statements of the cause of insured's death, as appearing in the proofs of death, made an issue of fact as to whether plaintiff was entitled to $50.00 or to $200.00.

The plaintiff himself testified that the company did not make or offer payment to him, in settlement of the claim, of any amount. Dr. Jean La Borde, the physician who attended the insured in her last illness, and whose statement of the cause of insured's death, as appearing in the proofs of death filed with the company, testified on behalf of the plaintiff as follows:

"Q. Please state to the Court and jury what in your opinion was the proximate cause of that child's death? A. The child had several conditions there. She had an acute nephritis. This was complicated by bronchial pneumonia which trouble would be the main cause of death.

"Q. State whether or not in your opinion the child died, or the proximate cause of her death was bronchial pneumonia? A. As the cause of death I put down any condition that possibly could have been a causal factor, but I should say that the main cause of death was undoubtedly that broncho-pneumonia. As a secondary cause, the child had a chronic tuberculosis."

It is to be observed that Dr. La Borde testified that he put down in his statement any condition that could possibly have been a causal factor, but that the main cause of death of the insured was undoubtedly bronchial pneumonia. In these circumstances, we think the Court properly submitted the question to the jury.

As to the second question, the plaintiff testified that, after the death of the insured, he called at the defendant's branch office in the City of Columbia, carrying with him the policy and the proofs of death; that he found in the office a representative of the company, who told him to leave his policy there and that it would be paid in full at once, and that pursuant to this promise and understanding he turned the policy over to the defendant; that, although he called at the company's office several times during a period of three weeks thereafter, and on each occasion demanded that he be paid or that his policy be returned to him, he was told by the defendant that the company did not intend to pay him anything or to give him his policy back; and that he then placed the claim in the hands of his attorney for collection. Mr. Kibler, attorney for plaintiff, testified that no offer of settlement was made to him by the defendant until after suit was instituted, and that the policy was not returned until after he had brought this action and made demand upon the company for it.

This testimony, if believed, warranted the conclusion that the plaintiff did not voluntarily deliver the policy to the company, but that he surrendered it upon defendant's promise to pay him the whole amount, and not $50.00, in a very short time; and that, further, after the company got possession of the policy, it persistently refused to return it or to pay anything. The question for the jury was whether, by a false promise, the defendant gained possession of the plaintiff's policy, his own property, with the intention of depriving him of the use of it in the collection of his claim, and thereby practiced a fraud upon him—in other words, whether the promise was made by the company with no in-

tention of fulfilling it, but for the purpose of defrauding the plaintiff. We think the testimony required the submission of this question to the jury.

In justice to the company, we may say that the testimony offered for the defendant, if true, tended to establish the fact that it acted in good faith. If it concluded, as it says it did, that the proofs of death filed with it by the plaintiff showed conclusively that the death of the insured resulted from nephritis and pulmonary tuberculosis, then it was justified in offering to pay the beneficiary $50.00 in full settlement of his claim under the provisions of the policy. But if the beneficiary refused to accept the amount offered in settlement, if anything was offered, then it was undoubtedly the company's duty to make immediate return to him of the policy. The testimony, however, on all material issues, was in sharp conflict, which made questions of fact for the jury.

The exceptions are overruled and the judgment of the trial Court is affirmed.

Mr. Chief Justice Blease and Messrs. Justices Carter and Bonham and Mr. Acting Associate Justice W. C. Cothran concur.