13618

JAMISON v. AMERICAN WORKMEN INS. CO.

(169 S. E., 88)

July, 1932.

*Messrs. Lide & Felder, C. E. Summers* and *L. M. Gressette,* for appellant,

*Messrs. Jos. C. Hiott* and *J. C. Hiott,* for respondent,

April 11, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

In this suit, the plaintiff sought both actual and punitive damages for the alleged breach, accompanied by fraudulent acts, of an insurance contract by the defendant.

The trial, in the Court of Common Pleas for Calhoun County, with his Honor, Circuit Judge Rice, presiding, re-

sulted in a verdict in favor of the plaintiff for $20.00 as actual damages and $480.00 as punitive damages.

In the appeal to this Court by the defendant, there are several exceptions, but counsel for the appellant, in their brief, say: "After all there are only two questions involved in the appeal * * * there should have been a directed verdict both as to actual and punitive damages." The argument in behalf of the appellant relates solely to these questions.

The proof on the part of the plaintiff, tending to support the allegations of her complaint, which, in many respects, were very general, was to the following effect:

The plaintiff, a very ignorant colored woman on March 12, 1931, at the solicitation of a colored "professor," acting as agent or "deputy" for the appellant insurance company, "took out" an insurance policy with the insurance company, wherein the company agreed, in consideration of the payment of certain monthly dues or premiums, payable on the 12th of each month, to pay weekly benefits, at the rate of $6.00 per week, to the insured in case of her illness, and $2,000.00 to the named beneficiary upon the death of the insured. The longer the policy was continued of force the more valuable the benefits to the insured became. The agent agreed with the insured, and so represented to her, that the company would give her at least ten days' notice, by mail, of the due date of any premium she would be called upon to pay. The required initial payment was made by the insured when the policy was delivered. There was exhibited to, and left with, the insured by the agent much alluring literature, carrying attractive pictures, all tending to show the great interest and care the company would take in protecting every right of the insured. For several months, and to a little while previous to the time of the cancellation of the policy, the company, from its home office in Washington, D. C., sent regularly to the insured notices as to the premiums due by her and the due

dates thereof, ratifying thereby the agreement between the insured and the company's agent that such notices would be sent. Until the monthly payment hereinafter mentioned, the insured paid all monthly premiums required of her by the company. Upon several occasions she did not send in her payments promptly, but in each instance, except the one mentioned later, the company made no question as to the time of payment and always accepted the money, establishing thereby a course of conduct which clearly showed its willingness to waive, and its waiver of, the prompt payment of the monthly premiums. During this time, however, no claim for any benefit under the terms of this policy was made by the insured. There is no question but that the premiums to keep the policy in force up to May 12, 1932, were paid by the insured and accepted by the company. About May 1, 1932, the insured became very ill and remained in that condition for from four to six weeks. The company did not send any notices as to the premiums to become due on May 12 or June 12, 1932. On June 11, 1932, the insured sent the dues which she should have paid on May 12, and would have paid if the usual notice had been sent to her. Along with that payment she notified the company of her illness. Then the trouble began. The company did not follow its usual custom of accepting money any time it was sent. It forthwith returned the last payment made by the insured. It did not send any blank to be used by the insured in making claim for her sick benefits, although, under the testimony, clearly the insured was entitled to some money as sick benefits. On July 5, 1932, the company wrote the insured that the old policy was no good and was canceled, but if the insured would return that policy and send the company 50 cents, a new policy, which would be good for the future, would be sent to her.

While denying in its answer any wrongful or fraudulent conduct, the appellant offered no testimony in the case.

The testimony of the plaintiff, the literature furnished her, the letters written her by the company, and the .reasonable inferences which may be drawn from the testimony, the literature, and the correspondence, were sufficient, in our opinion, to require the Court to submit the issues of both actual and punitive damages. the latter on the ground of fraudulent conduct on the part of the insurer, to the jury. The representations of the agent, the promises made, the course of conduct of the insurer and its agent, all taken together, in the absence of any denial or explanation by the agent, were such as to justify the jury's verdict. See *McLoud v. Metropolitan Life Insurance Company*, 167 S. C., 309, 166 S. E., 343; *Wilkes v. Carolina Life Insurance Company*, 166 S. C., 475, 165 S. E., 188; and *Lane v. New York Life Insurance Company*, 147 S. C., 333, 145 S. E., 196.

The judgment of this Court is that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.