14004

## WALKER v. LIFE INS. CO. OF VIRGINIA

(178 S. E., 618)

154

*Messrs. Thomas, Lumpkin & Cain,* for appellant,

*Messrs. E. J. Best* and *Cooper & Maher,* for respondents,

February 13, 1935.

The opinion of the Court was delivered by MR. C. J. RAMAGE, ACTING ASSOCIATE JUSTICE.

This opinion must be taken in connection with the opinion in the case of *Sally Medlin v. Life Insurance Co. of Virginia* (S. C.), 178 S. E., 615, which was heard at the same time as the present case by the order of former Chief Justice Blease, whose retirement from the bench by resignation was so universally regretted both by bench and bar.

It is alleged in the complaint in this case that plaintiff received a policy from defendant in 1925 and that said policy continued of force until some time in 1929, when defendant and its agent took the said policy of insurance and together with the receipt book under the pretext or guise of having the same revived, but after repeated demands the defendant company and its agents have refused to return the same policy or receipt book to the plaintiff or her agent, but have retained the same in the custody and possession of the said defendant and its agent, and that, at the time the said policy of insurance was taken by the defendant and its agent, it was in full force and effect and needed no revival; that the acts and conduct of the defendant company, and its agent as above set forth, were fraudulent, intentional, willful, and unlawful to the damage of the plaintiff in the sum of $3,000.00. The answer and Exceptions 4 and 5 will be printed in the report of the case and need not be set out here.

Mrs. L. E. Walker testified in substance: I took a life insurance policy on my daughter, Louise Walker, she was then three days old; it was a growing policy, a ten-year policy of 20 cents a month running up to something over $300.00 at the end of the ten-year period, to be paid in full then; took out the policy and paid the premiums through the Chester, S. C., office; carried policy a little over three years; it got three weeks in arrears and I wanted to pay one week on it and the agent asked me to let him take it and have it revived. I let him have the policy to revive it, and we never got it back. I thought he would advise me the best thing to do;

I did not want it to get in the arrears and he was to bring it back; he was the agent of the Life Insurance Company of Virginia. I never got the policy back. I made demand in the Chester office for the policy and also at the Columbia office. They took the receipt book about three months later; they took the policy in February, 1929, and the receipt book the following June. The receipt book was a small book with about five leaves; Mr. Harris, an agent of the company, came and asked for the receipt book, and we gave him the receipt book and the little slips. He said he was bringing them to Columbia to get the policy numbers so they could get duplicates of the policies they had misplaced; agent told me that he would have the policies revived and promised to have them back in two weeks. I went to the office in Chester and he gave us the numbers and said he would look up the policies and mail them to us in the next few days. I have never been able to get the policies; the number is 4,515,822. It was three weeks in arrears and we had four weeks of grace. I was still entitled to another week of grace when the policy was taken up; the agent got the receipt book while I was at Red Bank; my mother-in-law sent the agent to me.

L. E. Walker: Witness swore that he saw the agent who took up the policies at Great Falls, and he told me that he would send the policies to Red Bank. I saw him the same date I was moving. We moved away from Great Falls some time in April, 1929, going to Red Bank.

Mr. R. H. Orr, for defendant, swore: Admits getting the policy to have the same revived after it had lapsed; it was revived on a lien note; it was seven weeks in arrears, and the company loaned them on this policy; signed a lien agreement, and the indebtedness stands against the policy and is paid when they have a loss under the policy. When the policy came back, Mr. Walker was not there at Great Falls. They (policies) came back two weeks after they were sent off; they were revived on February 4; we at-

tempted to deliver but could not find them in Great Falls; the policy lapsed in four weeks on March 4, 1929; Mrs. Walker was not living in the house till April.

Even a casual reading of the testimony will show that there is a sharp conflict, and it makes a jury question.

It was a question for the jury whether or not the defendant got hold of the policy and receipts and fraudulently kept them in order that the policy might lapse. These were matters for the jury to pass on, and we find no error in his Honor's failure to grant nonsuit, direct a verdict, or to order a new trial. These exceptions are dismissed.

We cite the following cases: *Wilkes v. Carolina Life Ins. Co.,* 166 S. C., 475, 165 S. E., 188; *McLoud v. Metropolitan Life Ins. Co.,* 167 S. C., 309, 166 S. E., 343; *Derrick v. N. C. Mutual Life Ins. Co.,* 167 S. C., 434, 166 S. E., 502; *Sutton v. Continental Cas. Co.,* 168 S. C., 372, 167 S. E., 647; *Hampton v. Supreme Lodge,* 161 S. C., 540, 159 S. E., 923.

Under the cases cited which are in addition to the *Bradley case,* 170 S. C., 509, 171 S. E., 243, the testimony shows it was not error to leave the matter to the jury.

The other exceptions relate to alleged errors in the Judge's charge. We ask the reporter to set out what was said as to actual damages, leaving out that part about punitive damages. We find no error when all the charge is taken together. The matter was clearly and fairly submitted to the jury, and we see no error in what his Honor did. His construction of the policy was fair, and defendant could not complain, as the way was open to request further instruction, which was not done.

Judgment below is hereby affirmed.

Messrs. Justices Stabler, Carter and Bonham concur.