14005

MEDLIN v. LIFE INS. CO. OF VIRGINIA

(178 S. E., 615)

162

*Messrs. Thomas, Lumpkin & Cain,* for appellant,

*Messrs. E. J. Best* and *Cooper & Maher,* for respondents,

February 13, 1935.

The opinion of the Court was delivered by MR. C. J. RAMAGE, ACTING ASSOCIATE JUSTICE.

This action was instituted in the Court of Common Pleas for Richland County in November, 1931, for the recovery of $3,000.00 damages alleged to have been sustained on account of the alleged breach of a contract of insurance No 4147587, issued by the defendant on the life of the plaintiff which said wrongful breach was accompanied by a fraudulent act.

The defendant by its answer alleged that the policy had become lapsed for nonpayment of premiums in accordance with its expressed terms and that no application for the reinstatement thereof had been received, and it specifically

denied that it was guilty of any wrongful or fraudulent act in connection with the lapse of said policy or in its relation toward the plaintiff. The appeal raises certain questions as to refusal to grant a nonsuit, to direct a verdict for the defendant, to grant a new trial, and to error in the charge all as shown by the exceptions.

1. As to the refusal to order a nonsuit in the case, we hold that his Honor did not err.

The complaint in sum and substance alleged that plaintiff had a policy of insurance which was in force and effect, and that some time in 1929 the defendant and its agent took the said policy of insurance, and together with the receipt book under the pretext or guise of having the same revived, but after repeated demands the defendant company and its agents have refused to return the same policy or receipt book to the plaintiff on her agent but have retained the same in the custody and possession of the said defendant and its agent; that at the time the said policy of insurance and receipt book were taken by the defendant and its agent it was in full force and effect and needed no revival; that the acts and conduct of the defendant company and its agents as above set forth were fraudulent, intentional, and willful and unlawful to the damage of the plaintiff, $3,000.00.

The answer and Exception No. 4 will be set out in the report of the case.

Mrs. L. E. Walker testified in substance: There was a policy to me in the sum of $300.00. I was beneficiary. Premiums were 30 cents a week; policy became three weeks in arrears. One day in January I offered to pay agent then what I had to pay him on Saturday, and he advised me to have my husband's paid up. The agent took off four policies to have them revived. He promised to bring them back in a week or so, but he did not bring them back. I have never seen either of the policies since. Demand has been made on the company for the policies. Harris, another agent, took

the receipt books also which contained a receipt for all the policies. Harris took some revival slips also with the receipt book. My mother-in-law saw him over at the mill at Red Bank and sent him over to the house; he came over to the house and asked me about the insurance, and he said that he would not try to get the old policies back, but he would write to the company and get a duplicate of the policies, which would be just as good, and he would have them in two weeks, and asked me to let him take the book to Columbia office to get the old policy numbers off of it and would get it straightened out and get them back in two weeks; he promised to get duplicate policies. I have not seen the receipt book since I gave it to him. We made demand for the policy at the Chester office; the manager was there and he went in there and looked around for it, but he could not find them and said he would look them up and send them to us, but we never heard of him any more. I left my address with him. At the time the agent took up the policies, they were only three weeks in arrears; it took four weeks for them to run out—to be out of benefit. The agent took them away to have them revived and promised to return them in two weeks. This was along about the last of January or the first of February. I remained in Great Falls till the first of April. I offered him one week pay on them but he refused to take the payment and he asked me not to pay it, as he would revive it. I offered to pay, but he refused to take it.

Another witness, L. E. Walker, swore that he notified the agent Orr,. who it is claimed took up the policies, that the Walkers were moving to Red Bank, S. C.

The case of *Bradley v. Metropolitan Life Ins. Co.,* 162 S. C., 303, 160 S. E., 721, holds: "In action for fraudulent breach of contract, where fraud alleged was a statement by the agent, after death of insured, that the policy would be paid, on which assurance the policy was sent in to the

company and not returned to assured's administrator, a verdict for punitive damages was sustained."

*Wilkes v. Carolina Life Ins. Co.,* 166 S. C., 475, 165 S. E., 188, we find: "In action against insurer for damages for inception and putting in operation, of fraudulent design to compel lapse of policies by refusing to accept premiums, complaint held not demurrable. There was running throughout complaint as cause of action the underlying allegation that it was purpose of insurer's agent to force lapse of policies by refusing to collect or accept any more premiums."

*Crosby v. Met. Life Ins. Co.,* 167 S. C., 255, 166 S. E., 266, was based on the theory that insurer fraudulently induced plaintiff to pay premiums of policy on another's life in consideration of making plaintiff beneficiary.

*McLoud v. Met. Life Ins. Co.,* 167 S. C , 309, 166 S. E., 343, was based on the theory that insurer misappropriated premiums sent by insured for the purpose of keeping the policy alive; thus lapsing policy by refusing to credit the money on the policy.

*Derrick v. N. C. Mut. Life Ins. Co.,* 167 S. C., 434, 166 S. E., 502, was for insurer's wrongful refusal to pay amount of policy or return policy.

*Sutton v. Cont. Cas. Co.,* 168 S. C., 372, 167 S..E., 647, was for the fraudulent cancellation of a health policy.

*Hedgepath v. Provident, etc., Ins. Co.,* 169 S. C., 364, 168 S. E., 857, was for the fraudulent breach of contract by obtaining a release of claims under accident policy assumed by defendant.

*Jamison v. American Workmen Ins. Co.,* 169 S. C., 400, 169 S. E., 83, was for insurer's fraudulent conduct in not mailing customary notices of due date of premiums as promised by its agent and in refusing to accept premium not promptly paid.

From a careful study of the testimony and cases bearing on the matter we hold that Judge Rice did not err in refusing to grant a nonsuit.

From a careful study of the testimony and cases bearing on the matter we hold that Judge Rice did not err in refusing to grant a nonsuit.

2. As to refusal to direct a verdict for defendant and to grant a new trial after the verdict, we see no error in Judge Rice's action.

In addition to the testimony of the plaintiff's witnesses, it was admitted by F. L. Whitlock, a witness for the defense, that the Walker family did deliver these policies to the company for revival, and they were revived, and that every effort was made to deliver them back to the Walker family. Also that in the meantime the policy lapsed. All this testimony made it a question for the jury under the pleadings, and, as the matter rested with Judge Rice, we cannot say that he was in error in refusing a direction of a verdict cr in the refusal of a new trial.

3. When we take the ground made in Exception No. 4 against the charge of his Honor in connection with the general charge, the testimony, and the pleadings, we fail to see any reversible error. If appellant wished any fuller discussion of the matter by the Court, the way was open by making a request, and, as this was not done, there is no just cause of complaint.

It is the judgment of this Court that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.