**William F. FUDGE, Plaintiff,**

v.

**PHYSICIANS INSURANCE COMPANY,**
a foreign corporation, Defendant.

Civ. A. 1637.

United States District Court,
W. D. South Carolina,
Rock Hill Division.

Nov. 19, 1954.

Robert W. Hemphill and David R. Rogers, Chester, S. C., for plaintiff.

Neville Holcombe, Spartanburg, S. C., for defendant.

WYCHE, Chief Judge.

In compliance with Rule 52(a) of the Rules of Civil Procedure, I find the facts specially and state my conclusions of law thereon as follows:

### Findings of Fact

1. Plaintiff and his wife own a small farm in Chester County, South Carolina, and both are of limited means and of limited education.

2. Plaintiff's wife was under the care of a doctor and had been advised that she should have a hysterectomy.

3. The defendant is a foreign corporation incorporated under the laws of some State of the Union other than the State of South Carolina, having its home office at St. Louis, Missouri, and maintaining offices, agents and places of business in South Carolina.

4. Sometime after the doctor's advice, and prior to October 28, 1953, plaintiff received through the mail a circular from the defendant addressed to Rural Boxholder, advertising its hospital and surgical benefit insurance policy, in which was enclosed a postal card addressed to the defendant asking defendant for information concerning its insurance policy.

5. Plaintiff's wife signed and returned the postal card to the defendant.

6. Sometime thereafter, on October 28, 1953, defendant's agent Floyd C. Taylor, evidently in response to plaintiff's postal card, was sent by the defendant to solicit insurance from the plaintiff, visited the home of the plaintiff and as agent of the defendant solicited and undertook to sell him defendant's hospital and surgical benefit insurance policy to cover plaintiff, his wife and family.

7. When the agent of the defendant company approached plaintiff to solicit the insurance, plaintiff and his wife told him that plaintiff's wife had been ill and

had been advised by her doctor that she would have to have an operation and that he did not want to take out any policy of insurance unless the policy of insurance would cover and pay the hospital and surgical bills incident to such operation.

8. The agent of the defendant assured the plaintiff that the policy of insurance would cover the expenses of the pending operation.

9. Defendant's agent in his deposition testified as follows: "I understood from him (Mr. Fudge) *verbally* that she (Mrs. Fudge) was to have some sort of operation; some female trouble." And again, "Yes, Mr. Fudge did tell me about his wife's pending operation as I previously stated in question No. 10." Yet in spite of this information which he admits was given to him by the plaintiff, the agent of the insurance company filled out the application in his handwriting for the insurance and wrote the following answers to questions in the application:

"6. Are you and all other members of the Family Group now in good health and free from any physical or mental defect? Yes.

"8. Do you now have, or have any member of the Family Group ever had, any disease of the heart, lungs, kidneys, stomach, bladder or generative organs? No.

"9. Have you, or any member of the Family Group received medical or surgical advice or treatment within the past three years? No."

and permitted the plaintiff to sign the application without telling him how he had misrepresented in the application the information plaintiff and his wife had given him, and then assured plaintiff and his wife that the policy of insurance would cover the expenses of the pending operation, and then and there on October 28, 1953, collected from the plaintiff Ninety One and 31/100 ($91.31) Dollars, premium for the defendant insurance company, but the policy was not issued until November 13, 1953, as its effective dates.

10. Neither the plaintiff nor his wife read the application but relied entirely upon the agent to give the information in the application that he admits was given to him.

11. The policy contained *inter alia* the following provisions: "Physicians Insurance Company, an Old Line Legal Reserve Stock company, St. Louis, Missouri, (hereinafter called the Company) hereby insures the applicant, first named in Statement 1 of the copy of the application attached hereto (hereinafter called the Insured), against loss by reason of hospital residence and surgical expense incurred by the Insured and the eligible members of the Insured's family named in said Statement 1 (all of whom, including the Insured, are hereinafter called the Family Group) and will pay the indemnities provided herein toward hospital expense caused (1) by accidental bodily injury sustained while this policy is in force, hereinafter referred to as 'such injury', and (2) by sickness which originates and causes loss while this policy is in force, hereinafter referred to as 'such sickness', subject to all provisions, conditions and limitations hereinafter contained."

"Surgical indemnity on account of such sickness shall attach only if 'such sickness' originates more than ninety (90) days from effective date."

"This insurance shall extend to and cover hospitalization due to heart or circulatory disorders, cancer, tuberculosis, diabetes, appendicitis, hernia, gall bladder, kidneys, hemorrhoids, paralysis, or *any disease affecting or involving the generative organs*, but only if such condition shall originate after this policy has been in force for three months or more from the effective date."

12. When the policy of insurance was received by the plaintiff from the defendant insurance company, plaintiff and his wife read it and both of them thought that the pending operation was covered as represented and assured by defendant's agent.

13. On February 24, 1954, one hundred, four days after the effective date

of the policy, plaintiff's wife had the contemplated operation which plaintiff and she had told the defendant's agent about; a hysterectomy was performed at Saint Phillips Mercy Hospital at Rock Hill, South Carolina, where she was confined for twelve days. The hospital and surgical expenses amounted to Three Hundred, Thirty and 85/100 ($330.85) Dollars.

14. When the plaintiff filed proof of his claim for hospital and surgical expenses the defendant insurance company declined to pay the claim because the condition which necessitated the hospitalization and operation originated before the end of the ninety-day waiting period.

15. The plaintiff, through his attorney, on May 8, 1954, demanded a refund of the premium with interest. Defendant declined to refund the full premium but did tender a refund of the premium then unearned on the policy, on the assumption that plaintiff desired to cancel it. The tender was declined and this action was brought.

16. Plaintiff and his wife are credulous, ignorant and unwary and this fact must have been apparent to the agent of the defendant insurance company, as it was apparent to me at the trial.

17. The defendant through its agent made a material representation as to what the policy plaintiff was paying for would cover. He knew that it would be acted upon by the plaintiff. Plaintiff acted in reliance upon it and plaintiff has suffered a loss thereby.

18. Floyd C. Taylor was acting as the agent of the defendant in all the acts done by him and all representations made by him in connection with the sale and delivery of the insurance policy to the plaintiff.

19. Plaintiff is entitled to recover the hospital and doctor bills amounting to Three Hundred, Thirty and 85/100 ($330.85) Dollars, actual damages; and Two Hundred ($200.00) Dollars, punitive damages.

### Conclusions of Law

1. On October 28, 1953, Floyd C. Taylor in all his actions and representations was acting in the scope and course of his employment as an agent of the defendant. Section 37–233, Code of Laws of South Carolina, 1952; West v. Service Life & Health Ins. Co., 220 S.C. 198, 66 S.E.2d 816; Williams v. Commercial Casualty Ins. Co., 159 S.C. 301, 156 S.E. 871; Glens Falls Indemnity Co. v. Palmetto Bank, D.C., 23 F.Supp. 844, affirmed 4 Cir., 104 F.2d 671; Schafer v. Maryland Casualty Co., D.C., 123 F.Supp. 873.

2. The agent Floyd C. Taylor practiced fraud upon the plaintiff by misrepresenting the type of policy he was selling the plaintiff, by taking his money and taking advantage of the credulity, ignorance and unwariness of plaintiff and his wife. Shumpert v. Service Life & Health Ins. Co., 220 S.C. 401, 68 S.E.2d 340; Cook v. Metropolitan Life Ins. Co., 186 S.C. 77, 194 S.E. 636; Crosby v. Metropolitan Life Insurance Co., 167 S.C. 255, 166 S.E. 266.

3. In the case before me we have an ignorant, credulous plaintiff with an equally ignorant, credulous wife, and with no circumstances to incite suspicion, dealing with a representative of the defendant who was well-informed, and who, according to the evidence in this case, fraudulently misrepresented the provisions of the policy of insurance in material particulars. In a similar case, Thomas v. American Workmen, 197 S.C. 178, 14 S.E.2d 886, 887, 136 A.L.R. 1, the Supreme Court of South Carolina said: "the right to rely upon representation is inseparably connected with the correlative problem of the duty of a representee to use diligence in ascertaining the truth with respect to the representations made to him. * * * the rule sanctioned by some courts is that where one party to a transaction induces the other party to enter into it by willful misrepresentations, he cannot escape liability for his fraud by showing such party could have investigated the representations made, and would have found that they were untrue. * * * We have not gone to this extent. The policy of the courts is, on the one hand, to suppress fraud, and

on the other, not to encourage negligence and inattention to one's own interest. Either course has obvious dangers. But the unmistakable drift is toward the just doctrine that a wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and unwary. Whether or not reliance upon a representation in a particular case is justifiable or excusable, what constitutes reasonable prudence and diligence with respect to such reliance, and what conduct constitutes a reckless or conscious failure to exercise such prudence, will depend upon the various circumstances involved, such as the form and materialty of the representations, the respective intelligence, experience, age, and mental and physical condition of the parties, and the relation and respective knowledge and means of knowledge of the parties. (Citing cases.) It is undoubtedly true that the principle of the right of reliance is closely bound up with a duty on the part of the representee to use some measure of protection and precaution to safeguard his interest."

In this case it is my opinion, under all the circumstances and all the evidence, that there was no contributory negligence on the part of the plaintiff and his wife.

■■ 4. As to the measure of damages, "As a general rule, one injured by the commission of fraud is entitled to recover such damages in a tort action as will compensate him for the loss or injury actually sustained, and place him in the same position that he would have occupied had he not been defrauded. (Citing authority.) The recovery is restricted in all cases to such damages as were the natural and proximate consequences of the fraud, and such as can be clearly defined and ascertained, including those which were actually or presumptively within the contemplation of the parties when the fraud was committed." Thomas v. American Workmen, supra. If plaintiff had obtained the policy he contracted to buy and paid for, he would have been paid doctors' and hospital bills

amounting to Three Hundred, Thirty and 85/100 ($330.85) Dollars, and this is the amount of actual loss plaintiff has sustained. Such damages under the evidence were the natural and proximate consequences of the fraud. Thomas v. American Workmen, supra.

■ 5. "It is the duty of insurance companies and their agents to carry out their contracts. It is clearly a violation of their duty to practice fraud or deception in the making of these contracts, or in their performance." Bradley v. Washington Fidelity Nat. Ins. Co., 170 S.C. 509, 520, 171 S.E. 243, 247.

■ The evidence in this case shows that the plaintiff and his wife were people of limited education and intelligence; did not understand or appreciate their rights; they depended on the defendant's agent for correct information and had faith in his statements. Such agent informed them that the expenses of plaintiff's wife's operation would be covered by the insurance policy plaintiff bought and paid for. The agent in making such statements to the plaintiff and his wife was not expressing his opinion, but he knew when he did so he was perpetrating a wilful fraud upon them. Under such circumstances plaintiff is entitled to recover not only actual damages but punitive damages. Welch v. New York Life Ins. Co., 183 S.C. 9, 189 S.E. 809; Bradley v. Washington Fidelity Nat. Ins. Co., supra.

6. Plaintiff is entitled to judgment against defendant for actual damages in the amount of Three Hundred, Thirty and 85/100 ($330.85) Dollars, and Two Hundred ($200.00) Dollars, punitive damages.

Based upon the foregoing Findings of Fact and Conclusions of Law, I am of the opinion that the plaintiff William F. Fudge should have judgment against the defendant Physicians Insurance Company, for Three Hundred, Thirty and 85/100 ($330.85) Dollars, actual damages, and Two Hundred ($200.00) Dollars, punitive damages, and

It is so Ordered.