13610

HEDGEPATH v. PROVIDENT LIFE & ACCIDENT INSURANCE CO.

(168 S. E., 857)

March, 1932.

*Messrs. Tobias & Turner,* for appellant,

*Messrs. Gaston, Hamilton & Gaston,* for respondent,

April 4, 1933.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action was begun in March, 1932, in the Court of Common Pleas for Chester County, and is predicated upon

an alleged fraudulent breach of contract; the fraud charged being in connection with a release obtained by defendant from plaintiff on December 27, 1930. The complaint alleges that on July 6, 1925, the Standard Accident Insurance Company, of Detroit, Mich., issued and delivered to plaintiff "a policy of insurance upon his life and upon his health and against accident"; that under the terms of the policy the company, in consideration of the payment in advance of $47.40 as the yearly premium, agreed, *inter alia,* to pay to plaintiff a monthly indemnity of $60.00 for a continuous period, not exceeding two years, "commencing with the date of the accidental event during which the insured shall be continuously and wholly disabled thereby from performing any and every kind of duty pertaining to any occupation"; that, about four years before the commencement of the action, "the defendant Insurance Company purchased and took over and assumed all outstanding policies of insurance existing at that time in South Carolina issued and sold by Standard Accident Insurance Company, * * * and all such policies thereupon became contracts of insurance of the defendant company, and South Carolina policyholders in said Standard Accident Insurance Company, after said date of transfer, paid premiums on outstanding policies originally issued by said Standard Accident Insurance Company to the defendant Insurance Company"; that on or about August 5, 1930, the plaintiff suffered an accident to one of his hands, which resulted in blood poisoning, and was thereby rendered helpless and unable to work, becoming totally and permanently disabled, and that at the time of the commencement of this action he had completely lost, not only his health, but his entire sense of hearing; that in December, 1930, the defendant company, after having made four monthly payments to plaintiff, sent to his home its agent, one D. H. Wilson, who, in pursuance of a plan and scheme to swindle, cheat, and defraud him out of the benefits to which he was entitled under his policy, advised him, through

his wife acting as interpreter, that the policy was not good, that the company had gone out of business, and was not liable for any other claims, that Dr. Henry, who had attended and was attending plaintiff, had stated to the agent that plaintiff would be well in a few days, and that the defendant through sympathy would pay him the sum of $85.65 in full and complete settlement of any and all claims growing out of his injury; that plaintiff at the time was "wrecked and ruined in health and in mental capacity," and, having full confidence and trust in defendant's agent, who stated to him that, unless he accepted the $85.65 at that time, he would not get anything further under the policy, he signed a release prepared by the defendant, which purported to discharge the company from all claims which he had against it on account of his injuries; and that the statements made by defendant's agent, which induced the plaintiff to execute the release, were false and untrue, and were so known to the defendant, and the plaintiff thereby was overreached and defrauded.

The defendant denied any breach of contract and any fraud whatever in its dealings with the plaintiff, and, after setting out that subsequently to the time it took over the obligations of the Standard Accident Insurance Company in this State it issued to the plaintiff its policy, alleged:

"That on or about the 27th day of December, 1930, and after this defendant had paid to the plaintiff various sums of money on account of the disability hereinabove referred to, the defendant made a final payment, which was wholly and thoroughly agreed to by the plaintiff and his wife, the beneficiary under said policy, in consideration for which payment the plaintiff receipted to the Company and released the Company for any further claims of any and all kinds for disability resulting from an alleged injury occurring on or about the 12th day of August, 1930.

"That said settlement was arrived at in complete accord and agreement between the plaintiff and this defendant and that said policy of insurance continued in force up to and

about the 20th day of January, 1931, at which time the plaintiff herein failed and refused to pay further premiums, for all of which reasons said policy lapsed and became null and void and of none effect."

On trial of the case before Judge Stoll and a jury in May, 1932, a verdict was found for the plaintiff for $1,099.20 actual and $1,900.80 punitive damages, and defendant now comes to this Court. We will not discuss the exceptions seriatim, but will dispose of them all in our consideration of the appeal.

I. It is contended, in the first place, that plaintiff cannot recover, as he here attempts, on one policy contract or damages for fraudulent breach thereof, when proof is directed to an entirely different contract. A consideration of this contention requires an examination of the pleadings and the testimony.

The plaintiff set out in his complaint only the policy of insurance issued him by the Standard Accident Insurance Company, all his allegations of damage being predicated upon and referable to the alleged fraudulent breach of this policy by the defendant in its obtainment of the release from him on December 27, 1930. The defendant, by its answer, admitted having taken over the business of the Standard Accident Insurance Company in this State, pleaded that it had thereafter furnished plaintiff its policy (evidently as a substitute), and set up the release as a complete defense to plaintiff's action. It is thus seen that under the pleadings both of the policies and the release were put in issue. Appellant argues that the trial Judge committed error in permitting an award to be made by the jury in accordance with the terms of the original policy, for the reason that it was not of force at the time the release was executed, but that, on the contrary, he should have directed a verdict for the defendant because the release, obtained by it under the substituted policy then in force, was valid and complete.

The plaintiff testified that only one policy, the original, was ever in his possession at any time; that, while he made application to the defendant for a policy to be substituted for the original, no such substituted policy was ever delivered to him; that he knew from a letter written him by defendant company that it had assumed the original contract of insurance, and from the premium notices that the number of the policy had been changed, but that he did not know that a substitute policy was in existence. There was no evidence that the agent told him at any time that the defendant had substituted its own policy for the one issued by the Standard Accident Company, though there was testimony of an uncertain nature tending to show that such a substitute may have been mailed to him. Plaintiff, however, was under no obligation to accept a substitute policy even if one were offered him, and certainly he would be bound by it only if and when he accepted it. In the circumstances, it could not be said as a matter of law that he had no rights under the original policy, which admittedly appellant had assumed, there being no evidence that he had ever received or accepted any other policy as a substitute therefor. We think, therefore, that the evidence objected to by defendant was admissible, and that the trial Judge properly overruled the motion for a directed verdict on this ground. The exceptions raising this question cannot be sustained.

II. The next position taken by appellant is that the release executed by plaintiff is a bar to his recovery, for the reason that the testimony fails to show its execution to have been induced by any fraudulent act on the part of the defendant. Our discussion of this question will include the contention that the Court committed error in refusing the motion for a directed verdict as to punitive damages, made upon the ground that the only allegations and proof of fraud related to the statements made by defendant's agent, Wilson, at the time the release was obtained, such

statements being predicated upon written information furnished him by plaintiff's own physician.

By assuming the original policy, appellant became obligated to pay to respondent $60.00 per month for a period of two years if he should be disabled for such time; under the terms of its alleged substitute policy, it would be obligated to pay him $60.00 per month so long as he might be disabled.

It is undisputed that the insured, while section master of the Southern Railway Company at Woodward, suffered, on or about August 5, 1930, an accident to one of his hands; and that one of his fingers became infected and blood poisoning set in, followed by pneumonia, infection, and softening of the spinal vertebræ and entire loss of hearing, total and permanent disability later resulting. He duly reported his condition to the defendant company, which paid him four monthly claims. Some time in November, 1930, having made slight recovery, he returned to his work, but, after a short while, was forced to give it up and go back to bed. He testified that on December 27, 1930, an agent of the defendant, one D. H. Wilson, came to his home while he was confined to bed, and told him that Dr. Henry, plaintiff's physician, had stated to the agent that day that the insured would be well and able to go to work in a few days; and that the agent further told him that the policy "was not any more good," ·for the reason that the company was going out of business, but that the company would pay him, through sympathy, the sum of $85.65, if he would release it from any other claims which might arise out of the accident, and that he would not get anything out of it other than what was being offered him, and he would have to take that amount then or not at all. He further testified that, having confidence in the agent's honesty, he was induced to sign the release because of these statements, which he believed at the time to be true but which were false. Mrs. Hedgepath, the wife of the insured, corroborated her husband's testimony, saying that she was

present at the time Wilson made the statements. She further testified that Wilson did not tell them that they would have to pay any further premiums or that the consideration written in the release was $365.00, but gave them a check for only $85.65, stating that that was all they could get and they would have to take it then. She also testified that her husband then was suffering very much and was in no condition to transact any business. Wilson denied that he stated to the insured and his wife that Dr. Henry had told him that Hedgepath would be well and able to work in a few days, and counsel for defendant introduced in evidence a report signed by Dr. Henry, of date December 27, 1930, in which the following question was asked and answered with reference to the insured: "If not fully recovered, when do you think he will be able to perform some duties? A. Three or four weeks." While Dr. Henry testified that he had made such answer to this question, he also stated that he gave the agent "a bad outlook for Mr. Hedgepath"; and that he did not tell Wilson that Hedgepath would be well in a few days or a few weeks or would be able to go back to work, but that he told him about Hedgepath's bad condition, including the loss of his hearing.

While this is not all the testimony in the record with reference to the release, it is sufficient to show that the Court properly refused to direct a verdict for the defendant. It was for the jury to say whether the release was procured by false and misleading statements made by defendant's agent, plaintiff being thereby overreached and defrauded, and this matter was properly submitted to them along with the question of both actual and punitive damages. The several exceptions, therefore, charging error in these respects, are overruled.

III. Appellant also contends that plaintiff attempted to maintain his action in derogation of the release without tendering or offering to return the amount paid therefor. Defendant refers this question to several exceptions which

charge the presiding Judge with error in refusing to direct a verdict on this ground. Reference, however, to the grounds actually advanced for a directed verdict does not disclose that any such question was raised upon such motion or was passed upon by the trial Judge. However, even if by a liberal construction of certain language used by counsel for defendant near the close of his argument for a directed verdict we should hold that the question was raised below and is properly presented by the appeal, the position taken is not tenable. We have examined all the evidence relating to the matter in the light of the several contentions made, and conclude that in the circumstances there was a sufficient tender.

IV. It is argued that the amount of actual damages ■ found by the verdict was in excess of any sum to which the plaintiff could possibly be entitled, and that the Court committed error in refusing defendant's motion for a new trial on that ground. This position is not without merit. The correct measure of actual damages in this case—and we assume that the trial Judge so instructed the jury, there being no exception to the charge—is the unpaid portion of sick benefits to which plaintiff was entitled under the terms of his policy; and this view is conceded by counsel for appellant. The verdict for such damages, therefore, should have been for that amount, with interest at 7 per cent. on all unpaid monthly installments.

The jury found, as a matter of fact, that the plaintiff was entitled to actual damages, and awarded him $1,099.20; but the award, applying the measure of damages laid down, should have been, in the light of the undisputed testimony, $978.05. We think, therefore, that the appellant should have remitted to it on the record the difference between $1,099.20 and $978.05, which amounts to $120.95.

It is therefore the judgment of this Court that, unless the plaintiff remit on the record, within ten days after the filing of the remittitur herein with the Clerk of Court for Chester County, the sum of $120.95, the judgment be re-

versed and a new trial granted; but that, if he so remit the sum of $120.95, the judgment is affirmed for $2,879.05. And it is so ordered.

The defendant also excepts to the order of the trial Judge settling the case for appeal. It appears that the appellant submitted, in narrative form, as a part of its proposed case, such testimony of all of the witnesses, as embodied, according to its view, "all matters pertinent and necessary for the purposes of this appeal." This was not agreed to by counsel for respondent, who claimed that what was proposed did not cover all the essential parts of the testimony, and the matter was referred to Judge Stoll, who allowed respondent's proposed amendment requiring all the testimony to be printed in question and answer form. As it is not made to appear just what testimony was proposed by the appellant to be printed, we are unable to determine the question presented. This appeal is therefore dismissed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.