13345

ALEXANDER v. DURHAM LIFE INS. CO.

(187 S. E., 425)

Before DENNIS, J., Anderson, December, 1935.

*Messrs. Allen & Doyle,* for appellant,

*Mr. Leon W. Harris,* for respondent,

August 15, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This action was brought by Rosie Alexander, respondent, against Durham Life Insurance Company, appellant, in the Court of Common Pleas for Anderson County on July 17, 1935, for the fraudulent breach of an insurance contract issued her by said insurance company. The policy of insurance was issued on April 16, 1923, and provides for the payment of weekly premiums in the amount of 20 cents, 20 per cent. of which premium was for life insurance benefits, and 80 per cent. of which was for disability insurance from sickness and accidents. The amount payable in the event of death from natural causes was $44.00 and the maximum weekly benefit for sickness or accident was $4.00 per week, with various special indemnities payable in one sum. The total number of weeks for which benefits would be paid under the policy is limited by the provisions thereof to 26 during any

12 consecutive months. Rosie Alexander sought damages against the insurance company, both actual and punitive, in the amount of $2,900.00.

The appellant filed an answer to the complaint, admitting the issuance of the insurance policy in question and the termination thereof, but denied that the same was wrongfully or fraudulently canceled by it or that it had fraudulently or otherwise breached any contractual obligation thereunder, and alleged further that the policy of insurance had lapsed for the nonpayment of premiums. The appellant also interposed a demurrer to the complaint which was heard upon the call of the case and overruled by the Circuit Judge.

The case was tried before his Honor, E. C. Dennis, and a jury on the 13th day of December, 1935. At the conclusion of plaintiff's testimony, the defendant moved for a nonsuit, which motion was overruled, and, at the conclusion of the testimony offered by appellant, the case was submitted to the jury, which returned a verdict for the respondent in the sum of $1,600.00 actual damages and $150.00 punitive damages. The appellant made a motion for a new trial, and the presiding Judge overruled the same as to punitive damages, and also overruled the motion for a new trial as to actual damages if the respondent or her attorney of record remitted the amount of $100.00 of the recovery. The order provided, however, that, in requiring the respondent to remit the amount of $100.00 or suffer a new trial, the same was done solely as a matter of law, and the respondent was granted the right to appeal from that portion of the order. Respondent remitted the sum of $100.00, and the case comes before this Court upon nine exceptions by the insurance company as the appellant, and one exception by Rosie Alexander as the respondent.

The first exception of appellant charges error on the part of the trial Judge in refusing to sustain the demurrer to the complaint, the ground of which was that the same did not state facts sufficient to constitute a

cause of action, in that the allegations thereof were not sufficient to charge the appellant with an actionable breach of any contractual obligation existing between the respondent and the appellant by reason of the contract of insurance, the error being that, if the allegations of the complaint were admitted, such facts were not alleged as would be sufficient to avoid or cancel the policy of insurance referred to therein, and all remedies of the respondent against the appellant by virtue thereof would be under the contract and not for the breach thereof. Under this exception we are concerned with only one question; that is, whether or not the complaint states facts sufficient to constitute a cause of action for the wrongful breach of a life insurance contract and a careful reading thereof will clearly disclose that it does. It is almost uniformly held that, where the insurance company wrongfully revokes its policy and refuses further to be bound by it, the holder may elect whether to enforce the contract or to treat it as rescinded. The complaint alleges, among other things, that, while the policy was in full force and effect, the appellant insurance·company canceled same and refused to accept further premiums thereon, and in certain other specified particulars refused to comply with the provisions thereof. While it is true that respondent could have sued to enforce the contract, she also had the alternative to treat the same as rescinded and bring suit to recover damages for the wrongful cancellation. The complaint might be objectionable on other grounds. A motion to make parts thereof more definite and certain, or to strike out certain parts thereof, may have been in order, but no question of this kind was raised in the Court below, and there is no exception raising such questions before us. In other words, in overruling this exception, we do not wish to be understood as giving sanction to the complaint as it stands.

The second exception of appellant charges error on the part of·the trial Judge in permitting testimony over the objection of appellant relating to an injury alleged to have been sustained about four years before the

trial, on the ground that the testimony was not relevant to any issue in the case and prejudicial to the rights of appellant. This exception cannot be considered on appeal, for the reason that no final ruling was made by the lower court when the objection was made. The objection and the ruling of the Court appear in the transcript as follows:

"Q. Do you recall several years ago, about four years ago, an injury to her? A. Yes, sir.

"Mr. Allen: We object, if the Court please, to that. That can have no bearing on it. Something that happened to her several years ago could hardly have any bearing on the fraudulent breach of the contract.

"The Court: Well, I can't tell in advance, Mr. Allen. If it hasn't I will strike it out.

"Q. What was that, Harve? A. She was milking the cow one night and got hung upon the chain and it throwed her over a chair and stobbed her leg on it, and she complained of it about four years.

"Q. This happened about four years ago? A. Yes, sir.

"Q. Has the leg been in bad shape ever since? A. Yes, sir, it's been in bad shape; sometimes gets a little better and she will get up and try to work on it, and she just gets back down again. So there's many times I would go there and she would be sitting up in a chair and had that leg up in a chair, that way, and couldn't do nothing much with it.

"Q. Part of the time how about being in bed? A. Well, she would be in the bed—

"Mr. Allen: We object to this testimony, if the Court please, and don't see its relevancy to any issue involved in the case. Of course we are just renewing it.

"The Court: I will take your objection to this, to all of this preliminary, and if it appears that it isn't relevant, on your motion I will strike it out."

At no place in the record does it appear that the appellant ever thereafter made a motion to strike out the testimony objected to, and therefore under the

case of *Armstrong v. Atlantic Coast Line R. Co. et al.*, 137
S. C., 113, 133 S. E., 826, 48 A. L. R., 482, and author-
ities cited therein, the alleged error in reference to the ad-
mission of the testimony will not be considered on appeal.
However, we do not think the testimony should have been
struck out even if the motion to strike had been made, be-
cause the respondent connected the injury with her physical
condition at the time of the cancellation of the contract and
also at the time of the trial of the case by showing that the
injury testified to affected her physical condition at the time
of the cancellation of the contract, which, according to our
view, would be relevant and competent on the ground that
the physical condition of the insured at the time of the can-
cellation of a life, health, or accident insurance policy is an
element to be considered in determining the amount of ac-
tual damages sustained by an insured upon the wrongful
cancellation of the contract by the insurer.

The third exception of the appellant charges error
in the refusal of the trial Court to grant its motion
for a nonsuit, which was made on the ground that
the uncontradicted evidence and testimony was to the effect
that the policy was lapsed, according to the testimony of the
respondent, at the time she tendered the money to pay the
premiums in arrears. It is true that the testimony of the
respondent, with reference to whether or not the tender of
premiums made by her, was before or after the expiration
of the grace period, to wit, until premiums for four weeks
were in arrears, is conflicting, but is susceptible of the in-
ference that the tender of the premiums was made and re-
fused by the company during the grace period. Also under
this exception appellant takes for the first time the po-
sition that there was a total failure of evidence of a can-
cellation or an attempted cancellation by the appellant of
the insurance policy referred to in the complaint. The record
does not disclose that the motion for a nonsuit was based
on this ground.

The fourth exception charges error in refusing to grant the motion of appellant for a nonsuit as to punitive damages on the ground that there was a total failure of evidence tending to support the alleged fraud. Respondent offered testimony that the insured was old, ignorant, and trusted the agent of the appellant; that the agent of the appellant represented to the insured when she requested blanks to file a sick claim during the grace period of the policy that he could not give her any because she was not confined to the bed (although there was no such provision in the policy requiring the insured to be confined to the bed before any benefits were payable) ; that, when the premiums were tendered at the office of the appellant during the grace period and while the policy was still in force and effect, and after the agent had learned of the physical condition of the respondent, it refused to accept them; that the agent of the appellant, after refusing to furnish respondent with blanks upon which to file claim for sick benefits, did not go back to her house, as was his custom, to collect the premiums.

Measured by the decision in the case of *Mack v. Life & Casualty Ins. Co. of Tenn.*, 171 S. C., 350, 172 S. E., 305, we are constrained to overrule this exception.

Appellant's fifth exception is as follows:

"5. The Trial Court erred in charging the jury as follows:

" 'Now, the proof of loss, or proof of claim   *   *   * the insured must furnish the company, or its authorized agent a certificate on the company's form, by a regular licensed and practicing physician who is satisfactory to the company, showing the nature of the sickness or injury, and, if the disability of the Insured shall continue for more than one week, a like certificate must be furnished each week of disability.'

" 'Written notice of injury or sickness on which claim may be based must be given to the company within twenty

days after the date of the accident causing such injury,' and so forth.

" 'Well, now, gentlemen, I will charge you this. That if the plaintiff in this case notified the defendant's agent, whose duty it was to collect these premiums, that she was ill and unable to work, and he told her that she couldn't get anything because she wasn't in bed, the company can't take advantage of that part which says that "written notice must be given", if she was misled by any statement of the company's agent, the company couldn't take advantage of that,' " the error being threefold:

"(a) That said charge segregated from the next ensuing paragraph in said policy was misleading and was calculated to convey the idea to the jury that plaintiff could not file a claim except on blanks furnished by the defendant, whereas it is specifically stipulated in the next ensuing paragraph of the policy as follows:

" 'The company, upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss, upon submitting within the time fixed in this policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made,'

"(b) The effect of said charge was to convey the idea to the jury that in the event of the failure of the defendant to furnish blanks to the plaintiff to be used in filing her claim, she was thereby relieved from complying with the obligation imposed by the contract on her with regard thereto.

"(c) That the following expression in the foregoing portion of his Honor's charge embodied an erroneous legal conclusion and was prejudicial to defendant's rights, namely:

" 'That if the plaintiff in this case notified the defendant's

agent, whose duty it was to collect these premiums, that she was ill and unable to work, and he told her that she couldn't get anything because she wasn't in bed, the company can't take advantage of that part which says that "written notice must be given." ' "

We are unable to agree with appellant that this portion of the charge was misleading and calculated to convey the idea to the jury that respondent could not file a claim except on blanks furnished by the appellant, or that it conveyed the idea that, in the event of the failure of the appellant to furnish blanks to the respondent to be used in filing her claim, she was relieved from complying with the obligation imposed by the contract, to wit, the giving of written notice. It is true the trial Judge only read a part of the provisions of the policy relating to the giving of written notice and the filing of formal proof of claim. but it will be noted that, when he ceased to read from the policy, he used the very significant words, "and so forth." The policy of insurance was in evidence and before the jury, and we are unwilling to say that the failure to read the ensuing paragraph in the policy was misleading or conveyed to the jury an erroneous idea. Also it will be noted that, regardless of the ensuing provision of the policy of insurance, the legal conclusion stated by the Judge would have remained the same. That the company could not take advantage of the provisions of the policy with respect to written notice was not predicated on the failure of the company to furnish blanks but upon the representation of the appellant's agent that there was no liability under the policy unless the insured was sick in bed, which was tantamount to a denial of liability, and therefore rendered written notice and formal proof unnecessary. *Cogsdill v. Metropolitan Life Insurance Company,* 158 S. C., 371, 155 S. E., 747. Also, if such a statement was made by appellant's agent, it was false, and, if the insured was misled thereby and lulled into inactivity relying thereon, the appellant would be estopped from tak-

ing advantage of the provisions requiring written notice and formal proof. The portion of the charge under consideration might have been clearer, but we are not willing to hold that it embodied an erroneous legal conclusion or that it was prejudicial to the rights of the appellant.

The sixth exception charges error on the part of the trial Court in charging the respondent's first request to charge which relates to the law of customary practices; the error being that the principles of law embodied therein were wholly inapplicable to any issue in the case. Suffice it to say that failure of appellant to perform any duty imposed upon it by the policy in question, whether that duty arise as a matter of contract or by operation of law, would be a circumstance to be considered by the jury with reference to whether or not the alleged wrongful cancellation was fraudulent. Standing alone, the mere failure to perform a duty imposed by contract or by operation of law would not be sufficient to support an allegation of fraud. Also the law as to customary practices was pertinent to the issue as to whether or not the tender of premiums was made while the policy was in force. We therefore are of the opinion that the charge relating to customary practices was not improper.

The seventh exception of the appellant is as follows: "7. The trial Court erred in charging plaintiff's third request to charge as follows:

" 'I charge you it is the duty of an insurance company to furnish blanks upon request of a policy holder, with which said policy holder may file application for the benefits under the terms of a disability policy. If the insurance company refuses to furnish said blanks and such refusal is the result of a scheme to defraud the policy holder of his or her rightful payments, this would be a fraudulent breach of a contract and would entitle the policy holder to recover both actual and punitive damages,' "
the error being:

"(a) That said statement of the duty of the insurance company segregated from the other stipulations of the policy relating to filing proofs of loss was misleading and prejudicial to the defendant, because it, by obvious implication, relieved plaintiff of complying with the obligation imposed by the contract on her in regard thereto;

"(b) That said statement is not an accurate statement of any legal principle relating to any issue in the case and was prejudicial to defendant."

We think this portion of the trial Judge's charge clearly stated the law, was not misleading or prejudicial, and related directly to one of the main issues in the case; namely, the fraudulent breach or cancellation of the insurance contract.

The eighth exception of the appellant charges error in charging at the request of respondent the mortuary table as embodied in the statutes, in that the table purports to find the expectancy of normal persons and would have no application to persons suffering from disease or disability. The trial Judge in charging the jury with respect to the mortuary table very clearly explained that the table referred to the life expectancy only of an individual in the ordinary human average. The mortuary table is not conclusive, but evidentiary only, and is to be considered in connection with other evidence as to the health, constitution, and habits of the insured; and it is proper for the trial Judge to have charged the jury with respect thereto.

The ninth exception of the appellant charges error on the part of the trial Court in refusing to grant a new trial, for the reason that the verdict of the jury was wholly arbitrary and was not responsive to the evidence produced in the trial of the case. A careful study of the record persuades us that this exception is without merit and that there was evidence produced to support a verdict for the respondent.

The respondent has also appealed from that portion of the order of the trial Judge requiring respondent to remit the sum of $100.00 of the amount of actual damages recovered or else suffer a new trial; such right of appeal having been granted to the respondent in the order requiring the remission. We are not in accord with the reason assigned by the trial Judge for reducing the amount of the verdict as to actual damages, but from the whole record we are satisfied that the reduction made by him was fully justified.

This Court is not called upon to pass upon the proper measure of damages for the wrongful cancellation of a life insurance contract by the insurer. It is true that in oral argument and in printed brief appellant undertook to argue "Measure of Damages" under its Exception 8, but neither this exception nor any other exception in this case raises such an issue. This subject is too intricate to be passed upon lightly and unless directly raised by the exceptions, we apprehend that this question will in course of time come squarely before the Court. We realize that at such time the Court will be compelled to declare a maximum limit and method of arriving at such maximum limit. Beyond that, it is improbable that the Court can declare any fixed rule by which there can be determined an amount approaching mathematical certainty.

We call to the attention of respondent's attorney Section 4, Rule 8, of this Court. There was no attempt to comply with this rule.

All exceptions have been thoroughly considered, and are overruled.

Affirmed.

Mr. Chief Justice Stabler and Mr. Justice Fishburne concur.

Mr. Justice Bonham dissents.

Mr. Justice Carter did not participate.

MR. JUSTICE BONHAM (dissenting) : I find myself not in accord with the major opinion in this case. It appears to me that the Circuit Judge was in error in overruling the demurrer to the complaint. The action was adjudicated, and was admitted by plaintiff's counsel to be one for the fraudulent cancellation of an insurance policy. The demurrer was based on the ground that the complaint itself showed that the policy had not been canceled. The allegations of the complaint may be sufficient to maintain an action for the enforcement of the terms and conditions of the policy, but they are not sufficient to sustain an action for the fraudulent breach of the policy.