## PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA v. RHAME.

### No. 884.

District Court, E. D. South Carolina.

March 16, 1940.

Thomas, Cain & Black, of Columbia, S. C., for plaintiff.

Henry C. Jennings, of Bishopville, S. C., for defendant.

MYERS, District Judge.

Upon the findings of fact herewith filed, the motion of the defendant for dismissal of the complaint as an act of sound discretion, presents two questions:

First: The defendant's view that the affirming of the judgment of the State court in favor of Rhame against the predecessor in interest of the substituted plaintiff (Rhame v. Pacific Mutual Life Insurance Company of California, 179 S.C. 297, 184 S.E. 685) should be construed as a consideration of that action as a suit upon the contract and not as an action in tort.

Second: Whether in the exercise of its discretion, the court, in the absence of any definite expression by the Supreme Court of South Carolina on said appeal from which a conclusion may be reached as to its view of the nature of the action, should refuse declaratory judgment and permit the defendant to bring his action in the State court for continuing disability benefits claimed under the contract of insurance; as the result of which action, the State court will be in position to construe its own decision. It is submitted that if this court should grant the prayer of the complaint and bar further action on the contract by the defendant Rhame, any future construction by the Supreme Court in an action by another party in like plight favorable to the contention here made by Rhame, would bar him from further rights under the disability insurance contract here considered.

In passing upon the appeal in Rhame v. Pacific Mutual Life Insurance Company of California, supra, the court approved of the submission of the question of fraud to the jury and of the award of damages, with the statement [179 S.C. 297, 184 S.E. 690]: "As we view the testimony, it was the province of the jury to say whether the release in question constituted a full and complete bar to the prosecution of this action; and the jury having answered the question against the appellant's contention, the exceptions must be overruled."

▉▉▉ The action was brought by Rhame for benefits which would have accrued to him but for the alleged fraudulent breach and cancellation to the time of the institution of the suit, being the measure of damages under authority of Jordan v. Equitable Life Assur. Society of the United States, 170 S.C. 19, 169 S.E. 673; see also Hedgepath v. Prov. Life & Accident Ins. Co., 169 S.C. 364, 168 S.E. 857, and, in addition for punitive damages which under this court's view of the decisions of the Supreme Court of South Carolina on election of remedies are only recoverable where the insured's rights under the contract of insurance have been surrendered and released and so recognized by him. In its construction of the nature of the action, this court is bound by what the plaintiff did at the time the action was brought, and not upon his present claim of disability thereafter continuing. To what extent his then physical condition and indications of further disability, if any, controlled his choice of remedies, on the 14th day of July 1933, would be a matter of speculation; and his present claim that the policy was worth infinitely more to him than the sum awarded in that action is not controlling.

In the Fourth Circuit opinion, Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, Judge Parker defines the Declaratory Judgment Act, 28 U.S.C.A. § 400, as not adding to the jurisdiction of the Federal court, but as providing an additional remedy for use in cases of which the courts already have jurisdiction. It is further held that the exercise of jurisdiction under that Act rests in sound discretion, which should be liberally exercised, to effectuate its purpose in affording relief from uncertainty and insecurity with respect to rights, status, and legal relations.

▉▉▉ It would seem useless to review the Quarles case at greater length or to cite extensively Stephenson v. Equitable Life Assurance Society, 4 Cir., 92 F.2d 406; Anderson v. Aetna Life Ins. Co., etc., 4 Cir., 89 F.2d 345; or New York Life Ins. Co. v. Roe, 102 F.2d 28, 123 A.L.R. 279. These cases all support the plaintiff's right to have the controversy disposed of here.

"It is settled that a controversy between an insurer and its insured as to the extent of the insurer's responsibility under the insurance policy involves the rights of the insurer and will support a declaratory judgment." Maryland Casualty Co. v. Consumers Finance Service, Inc., 3 Cir., 101 F. 2d 514, 515.

▉▉▉ The opportunity is here for full and complete determination of the rights of the parties under a specific insurance contract. I do not think that relief should be denied to the plaintiff on the assumption that this or some other insured in like

62

situation may induce the Supreme Court of South Carolina at some time in the future to do that which it has not yet done, and what, as this court is convinced, would be a reversal of the law of the State of South Carolina in its recognition of the doctrine of the election of remedies. It is my understanding of these cases, as hereinafter reviewed, that it could not consistently construe its decree in Rhame v. Pacific Mutual Life Ins. Co. of California, supra, so as to permit repeated actions of a nature inconsistent with that already adopted by the insured with reference to the contract in question. I do not conceive it to be the duty of a Federal court to dismiss cases of this character and relinquish them to State courts, merely because there may be involved a point of law for which there is no State court precedent. The decision in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 does not go to that extent. I am, too, convinced that the decisions of the South Carolina Supreme Court are already decisive of the rights of the defendant. Not only do its decisions on the question of election of remedies so convince me. The court in Dyson v. Commonwealth Life Ins. Co., 176 S.C. 411, 180 S.E. 475, concluded that an action for fraudulent breach of contract was an action for tort.

In Rogers v. Jefferson Standard Life Ins. Co., 182 S.C. 51, 188 S.E. 432, the decree of Judge Oxner, reported and affirmed, contains this language: "It is almost uniformly held that where the insurance company wrongfully revokes its policy, and refuses further to be bound by it, *the holder may elect whether to enforce the contract or to treat it as rescinded.* If he elects to pursue the latter course, there is much conflict among the courts of the various jurisdictions as to the measure of damages." (Italics mine)

The opinion in Alexander v. Durham Life Insurance Company, 181 S.C. 331, 187 S.E. 425, was written by Mr. Justice Baker, in which Mr. Chief Justice Stabler and Mr. Justice Fishburne concurred. It appeared from the leading opinion that the action was brought for the fraudulent breach of an insurance contract issued to plaintiff by the defendant company.

On page 335 of the opinion in 181 S.C., 187 S.E. on page 427, appears this language: "The complaint alleges, among other things, that, while the policy was in full force and effect, the appellant insurance company cancelled same and refused to accept further premiums thereon, and in certain other specified particulars refused to comply with the provisions thereof. *While it is true that respondent could have sued to enforce the contract,* she also had the alternative *to treat the same as rescinded and bring suit to recover damages for the wrongful cancellation.*" (Italics mine)

In Shuler v. Equitable Life Assurance Society of the United States, 184 S.C. 485, 490, 193 S.E. 46, 48, Mr. Justice Fishburne, in the unanimous opinion of the court, made the following statement: "By the weight of authority, where an insurer wrongfully cancels, repudiates, or terminates the contract of insurance, the insured may at once pursue *either* of three courses: (1) He may elect to treat the policy as still in force, and let the test of the validity of the cancellation or repudiation await until the policy is payable and is sued on; (2) he may sue in equity to set aside the cancellation, and to have the policy declared to be valid and in force; or (3) he may maintain an action at law to recover damages for the wrongful cancellation or repudiation. 32 C.J., § 461, p. 1263. This right inures to the benefit of the insured." (Italics mine) See also the annotations in 48 A.L.R. 107, and 107 A.L.R. 1233, to the same effect. It is of interest that the Shuler case was an action on an alleged fraudulent breach of an insurance contract.

At this juncture it is well to remark that Rhame unquestionably chose as his remedy the alternative of treating the contract at an end and instituting an action at law to recover damages for its wrongful cancellation or repudiation. The allegations of his complaint, which has been exhibited, do not in any manner indicate that he regarded the policy as still in force, or seek to base recovery on the provisions of the contract, but on the contrary it is alleged in paragraph 7 thereof: "That the failure of the defendant to pay said installments constituted a breach of said contract and said breach was accompanied by the fraudulent acts and conduct hereinabove alleged, and that by reason thereof the defendant is due the plaintiff as damages, both actual and punitive, a large amount of money, which amount the plaintiff reduces to the sum of $1700.00. * * *"

Clearly he did not choose the other alternative of suing on the contract provi-

sions, treating the policy as still in force, or suing in equity to set aside the cancellation and having the policy declared to be valid and in force.

The effect of this election remains to be considered.

"Election is simply what the term imports—a choice shown by an overt act between two or more inconsistent rights, either of which may be asserted at the will of the chooser alone. An election of remedies may be defined as the choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts. The doctrine is applicable where an aggrieved party has two remedies by which he may enforce inconsistent rights growing out of the same transaction and, being cognizant of his legal rights and of such facts as will enable him to make an intelligent choice, brings his action by one of the methods. Under such circumstances, the law says he shall not thereafter adopt the alternate remedy, for a suitor cannot pursue a remedy which predicates his case upon one theory of right and thereafter seek a remedy inconsistent with such prior proceeding. If he has voluntarily chosen and carried into effect an appropriate remedy with knowledge of the facts and his rights, he will not, in general, be allowed to resort afterwards to an inconsistent remedy, which would involve a contradiction of the grounds upon which he before proceeded." 18 Am.Jur. 129.

"The prosecution by plaintiff of an action at law to judgment, or a suit in equity to decree, with knowledge of his rights and of the facts, is held to be a conclusive election of the tribunal in which the action or suit is prosecuted which will bar subsequent proceedings for the same cause in the other tribunal." 20 C.J. 41.

See also 18 Am.Jur. 151. 12 Am.Jur. 974.

Walker v. McDonald, 136 S.C. 231, 134 S.E. 222, 223, involved a question of election of remedies. The court quoted with approval from the leading South Carolina case on the subject, McMahan v. McMahon, 122 S.C. 336, 115 S.E. 293, 26 A.L.R. 1295, as follows: " 'The doctrine of election of remedies is regarded as being an application of the law of estoppel, upon the theory that a party cannot in the assertion of his right occupy inconsistent positions in relation to the facts which form the basis of his respective remedies; it is based on the proposition that, when a party has two remedies proceeding upon opposite and irreconcilable claims of right, the one adopted excludes the other. * * It means that a certain state of facts relied upon as the basis of a certain remedy is inconsistent with and repugnant to another certain state of facts relied upon as the basis of another remedy. If a party should invoke a remedy appropriate to a certain state of facts, and there should exist another remedy appropriate to a different state of facts, inconsistent with and repugnant to the first state of facts, his invocation of the first remedy is an election which by the bare commencement of the action will bar his right to invoke the other remedy.' "

In applying these rules to the facts then before them, the court, in a unanimous opinion, said:

"The plaintiff's first cause of action is based upon the alleged deceit and fraud of the defendant in inducing him to enter into the contract of partnership, a repudiation, a disaffirmance of the contract of partnership, and a demand for the return of the money which he parted with as a result of such deceit and fraud.

"The second cause of action is a demand for an accounting of the partnership affairs and judgment for what the plaintiff might be shown to be entitled to under such accounting; a distinct affirmation of the contract of partnership which he repudiates in his first cause of action.

"The two causes of action are distinctly inconsistent, and a separate action upon either would have presented a case for the application of the doctrine of * * * remedies."

I cannot regard the three remedies which the courts of South Carolina have approved as open to a party whose policy contracts have been terminated by an act of an insurer, as being consistent, and, as has several times appeared in the quotations above, these remedies are alternative —a party can pursue one of them, but one only. Under the first alternative, a plaintiff can sit by until all of his rights under the contract have ripened, then bring an action to recover the contract payments to which he feels entitled; under the second, he invokes the aid of the court of equity to declare the contract to be valid and subsisting. Lastly, he is enabled to treat the repu-

diation by the insurer as final and commence his action at once for such damages as flow from the breach.

Were I in any doubt as to whether the action for fraudulent breach of a contract could be construed as an action to enforce the contract, such doubt would be dispelled by the following language of Mr. Justice Bonham's dissenting opinion in Alexander v. Durham Life Ins. Co., supra: "I find myself not in accord with the major opinion in this case. It appears to me that the circuit judge was in error in overruling the demurrer to the complaint. The action was adjudicated, and was admitted by plaintiff's counsel to be one for the fraudulent cancellation of an insurance policy. The demurrer was based on the ground that the complaint itself showed that the policy had not been cancelled. *The allegations of the complaint may be sufficient to maintain an action for the enforcement of the terms and conditions of the policy, but they are not sufficient to sustain an action for the fraudulent breach of the policy.*" (Italics mine)

■ The final sentence just quoted indicates very clearly that an action for the fraudulent breach of a policy contract is different from and alternative to an action for the enforcement of the terms and conditions of the policy.

It requires no extended discussion to conclude that an action for fraudulent breach not only does not regard the contract as continuing in force, but necessarily treats it as at an end, and is the exercise of one of the alternatives pointed out in Shuler v. Equitable Life Assurance Society, supra. To treat the contract as at an end for the purpose of recovering damages for its breach, and thereafter to seek to have it treated as in force, is to occupy positions not only inconsistent, but repugnant to each other.

■ The measure of damages, fixed and sought by the plaintiff, is not conclusive of the nature of the action. As pointed out by Mr. Justice Bonham, in Rogers v. Jefferson Standard Life Insurance Co., supra: " * * * after all is said and written, it remains true that the facts of each case are necessarily of potent influence in determining the measure of damages." (181 S. C. page 57, 188 S.E. page 434.)

■ By his voluntary act, the amount of damages for which Rhame demanded judgment was reduced from the amount to which he deemed himself entitled. See the excerpt from his complaint, above. It is axiomatic that parties should not try their cases piecemeal, and if the pursuit of the remedy adopted by Rhame was not fully compensatory for the breach of the policy contract, he is none the less bound by his choice of remedy.

■ There is an additional reason why the plaintiff herein must prevail under the decisions of the State court, and that is, as set up in paragraph 14 of the complaint, the operation of the doctrine of res judicata. It is clearly the law that a former adjudication is conclusive not only of the precise issues raised and determined, but of such questions as could and should have been made. Barfield v. Barnes, 108 S.C. 1, 11, 93 S.E. 425; Johnson-Crews v. Folk, 118 S.C. 470, 111 S.E. 15; Davis v. Town of West Greenville, 147 S.C. 448, 145 S.E. 193; Evans v. Creech, 187 S.C. 371, 197 S.E. 365; Dunlap & Dunlap v. Zimmerman, 188 S.C. 322, 199 S.E. 296.

■ This doctrine, as applied to actions on insurance policies, was considered in Lawton v. New York Life Insurance Co., 1936, 181 S.C. 230, 186 S.E. 909. Plaintiff therein had brought an earlier action for disability benefits, and in his second action sought recovery of attorneys' fees. In the order of Circuit Judge Ramage, sustaining a demurrer to the complaint (his order being adopted as the opinion of the Supreme Court), appear these statements, which I consider as applying with conclusive force to the case now under decision:

"But the real point in the case, it seems to me, is res adjudicata. The complaint in the case at bar is an effort to split a cause of action into two parts.

"In the first place, if plaintiff was not suing on the entire cause of action in the first suit, it does seem that both the court in which the action was tried and the defendant both ought to have been advised, in the former case, that part of the claim, the sum of $700.00, was being reserved for another and separate action; good faith and the orderly administration of justice would seem to require this.

"*When an action is brought on an insurance policy and nothing is said that would limit the case, one could assume that the whole matter is embraced in the suit. Not only what is decided in a case but what*

*ought to have been decided will be deemed settled and ended.*

" 'The rule against splitting is that a single cause of action, claim or demand cannot be split up or divided so as to be made the subject of different actions. If this is done and separate actions are brought for different parts of such a demand the pendency of the first may be pleaded in abatement of the others, and a judgment upon the merits in either will be available as a bar in the others.' Corpus Juris, 1106, 1107, Sec. 276.

" 'The object of the rule is to prevent repeated litigation between the same parties in regard to the same subject of controversy; to protect defendant from unnecessary vexation; and to avoid the costs and expenses incident to numerous suits.' C.J., 1107, Sec. 277. Section 278, which follows that just cited, says that it is a matter of public policy to prevent the hardship of unnecessary litigation; *it does not mean that a plaintiff cannot sue for less than is his due, but if he does so, he cannot maintain another action for the remainder of the same demand.* The rule applies both to actions in 'tort' and 'contract', and in 'law' cases is always recognized. In equity, cases the rule is not so strictly enforced. A cause of action is a right on the part of the plaintiff and a violation of such right by defendant." (Italics mine)

It becomes unnecessary, for purposes of this action, to determine whether Rhame's action in the State court amounted to an affirmance of the release. Even though a release is procured by fraud it may be affirmed, or as thus stated in 53 C. J. 1729: "Affirming Release and Suing for Damages. A defrauded releasor is not limited to his action to set aside the release, but he may affirm it and sue for damages for the fraud. * * *"

It suffices to base my conclusions upon the reasons already discussed. Having concluded that the State court's decisions are decisive of, and adverse to, the contentions of the defendant, it follows that no ground exists for the exercise of discretion in a refusal to proceed to an adjudication that plaintiff is entitled to the relief for which it applies in the complaint.

As required by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, separate findings of fact and an appropriate decree will be filed in conformity with this opinion and conclusions of law.