15855

NEW YORK LIFE INS. CO. v. SMITH
(38 S. E. (2d), 910)

*Messrs. W. L. DePass, Jr.,* and *Murdoch M. Johnson,* of Camden, for Appellant.

*Messrs. Thomas, Cain & Black,* of Columbia, for Respondent,

July 5, 1946.

Mr. Associate Justice Fishburne delivered the unanimous opinion of the Court.

On April 8, 1918, the New York Life Insurance Company, in consideration of the payment of an annual premium of $64.70, issued and delivered to Arthur Smith a life insurance policy in the sum of Twenty Five Hundred Dollars, containing accident and health benefit provisions. The stated premium included $3.00 for total and permanent disability benefits, and $2.70 for double indemnity.

By the terms of the policy it was provided:

"Whenever the Company receives due proof, before default in the payment of premium, that the insured, before the anniversary of the Policy on which the Insured's age at nearest birthday is 65 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby

permanently and continuously prevented from engaging in any occupation whatsoever for renumeration or profit, and that such disability has then existed for not less than sixty days * * * then, commencing with the annivarsary of the policy next succeeding the receipt of such proof, the Company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the Policy, the Company will not deduct the premiums so waived."

It was further provided:

"One year after the anniversary of the Policy next succeeding the receipt of such proof, the Company will pay the Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the Insured. Such income payments shall not reduce the sum payable in any settlement of the Policy."

On the third page of the policy, and below the final attestation clause and the signatures of the officers, there is stamped what may be designated for convenience, a war clause. This clause is in very fine print, and the impression of the stamp is so light that it can be read only with great difficulty. It was endorsed on the policy, according to the contention of the insured, subsequent to the date of its execution, and became a controversial issue in an action later brought by the insured after the company refused to pay disability benefits.

It is provided in the war clause that if within five years after the date of the issuance of the policy, the insured should engage outside the boundaries of Continental United States and the Dominion of Canada in military or naval service in time of war, "the provisions of this policy for total and permanent disability and for double indemnity benefits shall immediately become null and void, and the company will be liable for the refund of the unearned premiums if any paid for said benefits."

On May 6, 1941, the insured brought an action against the company, and in his complaint, in addition to setting up the foregoing facts, he alleged that on or about February 1, 1939, he became totally and permanently disabled by reason of bodily disease before having reached the age of 65 years, and while the policy was in full force and effect, and that proper proof thereof was furnished the company on or about August 25, 1939. That the company failed and refused to pay the plaintiff total and permanent disability benefits due him under the policy of insurance, or to perform its obligations thereunder; that thereafter he paid under protest the annual premiums due on April 8, 1940 and April 8, 1941, which under the terms of the benefit provision were to be waived.

The insured alleged that the war clause stamped upon the policy was an attempt on the part of the company to deprive him of the total and permanent disability benefits, was added without his knowledge or consent, and was done by the company as a part of a scheme to reduce its liability. He further alleged that the attempted cancellation was done without notice to him, and that he knew nothing of the scheme and design until he became permanently and totally disabled, at which time he was informed by the company that this disability provision was cancelled. He characterized the action of the company as being unlawful, wilful and fraudulent. In the prayer of his complaint, he sought a reformation of the policy by striking out the war clause endorsement, and demanded judgment for Three Thousand ($3,000.00) Dollars damages.

By its answer, the company admitted the issuance of the policy, the payment of the stated premiums by the insured under protest, its refusal to pay disability benefits, and alleged that the disability benefit provision had been eliminated from the policy by reason of the war clause stamped thereon. That under this clause the disability provision was cancelled upon the ground that in August, 1918, the insured was enrolled in the military or naval service of the United

States in the war then being waged against the Central Powers, and that he had left this country for service overseas. That in accordance with the provisions of the policy the annual premium was reduced from $64.70 to $59.00, which amount the plaintiff continued to pay. The company specifically denied any wrongful or fraudulent act in connection with the cancellation of the benefit provision, and denied that it was indebted to the plaintiff in any sum whatsoever.

It was admitted that the insured entered the military service during the first World War, leaving this country for France on July 5, 1918, and remaining there until March, 1919.

The case was tried in the circuit court before Judge Lide and a jury, and resulted in a verdict against the company for $618.00, actual damages, but without any finding of punitive damages. The award for actual damages was later, upon motion of the company, reduced because the jury had failed to take into consideration the reduction in the annual premiums. Subject to these deductions, the verdict included $250.00, which was one accrued annual payment for total disability, and a refund of the two annual premiums of $59.00 each paid by the insured under protest. There was no appeal from this judgment.

In the case now before us, the parties are reversed. The New York Life Insurance Company in this action seeks a declaratory judgment against Arthur Smith, the insured, adjudging that all rights, claims, and demands by virtue of the total and permanent disability and double indemnity provisions of the policy have been heretofore ended and terminated by reason of the judgment in the former case; and for an injunction enjoining the defendant from proceeding in any manner against the plaintiff on account of any alleged claim or demand under the disability and double indemnity provisions.

In its complaint, the insurance company sets up substantially all the matters and things hereinabove stated in connection with the first suit—which need not be here repeated.

The defendant, Smith, in his answer likewise gives a condensed history of the former action, but alleges that the verdict and judgment in the first cause correctly and finally fixed the liability of the insurance company for the payment of permanent and total disability benefits as set forth in the policy contract. That the disability benefit provision is still alive and in force, and that the insurance company is obligated to pay him under such provision Two Hundred and Fifty Dollars annually so long as he remain totally and permanently disabled.

The trial of the case resulted in a decree in favor of the insurance company, upon the theory of election. It was held that when the insured brought his action at law for damages based upon a breach of the contract accompanied by a fraudulent act, he had made his choice, and that such election of remedies was irrevocable. He now appeals to this court.

The precise question has never heretofore been presented to this court for determination. The issue as phrased by the respondent company is whether one can treat a contract as terminated, sue to recover for its alleged fraudulent breach, and following the recovery of actual damages in such action, thereafter assert that the contract is still in force.

■ Obviously, the policy contract cannot at one and the same time be both in force and not in force. The wronged party has the right to choose which it shall be, but he also has the corresponding duty to make such choice one way or the other. He cannot get both judgment or decree compelling performance of the contract as being still in force, and damages for the wrongful breach and termination of the contract.

If the allegations and claim for damages thereon, which the insured made in his complaint in the prior suit show

that the particular damages so sought are such that by necessary or logical implication it is evident that he has chosen and determined that the contract shall no longer be a continuing obligation, it will result that he cannot maintain another action for the performance of the contract. It becomes necessary, therefore, to carefully examine the complaint in that action in order to see upon what allegations damages were claimed.

It would perhaps be well to state that we are not concerned here with cases involving the remedy and measure of damages for wrongful cancellation of a life insurance contract. The issue before us has to do with the remedy pursued and the measure of damages for the wrongful breach of a policy providing for the payment of indemnity periodically.

By referring to the complaint in the first action, which we have already adequately summarized, it will be noted that neither directly nor indirectly did the insured treat the disability provision as being rescinded by him. He alleged that the war clause stamped upon the policy was an *attempt* on the part of the company to deprive him of disability benefits, and that the *attempted* cancellation of the disability provision was part of a scheme by the company to reduce its liability.

It will be observed, too, that the insured paid *under protest* the annual premiums on his life insurance, due on April 8, 1940 and April 8, 1941, which under the terms of the benefit provision were to be waived. It may clearly be inferred from the fact that the insured paid these annual premiums *under protest,* that he continued to rely upon the efficacy of the health provision, which if still in force waived the payment of such premiums. Payment made, under the circumstances shown, logically indicated affirmance of the contract by the insured, and not disaffirmance.

The prayer for the reformation of the policy by striking out the war clause, is likewise strongly suggestive that in

bringing the first action the insured had no intention of rescinding the provision of the contract for disability payments.

■ While the prayer cannot aid in making out a case otherwise defectively stated in a complaint, it may serve to show what kind of case the plaintiff supposes he has made, and the kind of relief to which he conceives himself to be entitled, and to indicate the object which he seeks to accomplish. 41 Am. Jur., Sec. 110, Page 366.

The trial judge charged the jury that the action was based upon an insurance contract, and instructed them as to the measure of damages, actual and punitive. That the measure of actual damages, if any, would be the total and permanent disability benefits which accrued before the commencement of the action, to wit: $250.00 due on April 8, 1941, plus the two annual premiums paid under protest. The judge likewise charged the law as to punitive damages recoverable for the breach of a contract accompanied by a fraudulent act.

In the course of the trial, the company moved for a nonsuit and a directed verdict upon the ground, among others, that there was no proof of fraud entitling the insured to a *modification* of the policy prayed for in the complaint, or damages therefor; and that there was no proof of any mutual mistake authorizing the *reformation* of the policy.

Following the verdict, the company made a motion for judgment *non obstante veredicto,* or in the alternative, for a new trial, upon the ground that the verdict for actual damages was excessive in that it constituted the recovery of benefits for which the plaintiff had made no payments; and again included the ground that there was no evidence of fraud or mutual mistake entitling the plaintiff to a *reformation* of the policy, or to damages based upon such reformation. And the additional ground that the plaintiff had set forth a cause of action in equity for the reformation of the policy contract, and hence the court, sitting as a chancellor in equity, should

have determined this equitable issue in favor of the insurance company, and withdrawn the case from the jury.

All of these motions, except the motion to reduce the verdict for actual damages, were overruled by the trial judge. He stated in his order denying a new trial that the allegations of the complaint made no reference to a cause of action in equity, but did state a cause of action at law for fraudulent breach of an insurance contract.

The company in the case at bar, in support of its contention that the action as brought was not for the enforcement of the contract, but for a fraudulent breach thereof, now stresses that part of the order to which we have just referred. It is quite evident, we think, that in doing so, the company is completely reversing its position.

■ It was stated in *Smith v. Volunteer State Life Ins. Co.,* 201 S. C. 291, 22 S. E. (2d), 885: "The claim of punitive damages does not change the subject matter of the action."

We think it clear that in the first action the insured did not treat the contract as finally and absolutely broken, nor did he seek to recover damages as upon a total breach. The contract was not rescinded, but as stated by the trial judge to the jury, the action was based upon the policy, and being a law case, only the rights and liabilities of the parties up to the time of the commencement of the action could be adjudicated.

■ We agree with the contention made by the insured that the verdict and judgment in the prior suit fixed and determined the obligations of the company under the contract. That judgment did not terminate the rights of the parties, but established the continuing validity of the disability and double indemnity provisions; and we know of no principle of estoppel under the circumstances shown here which would bar a second action for a new violation based upon a refusal to pay disability benefits accruing under the policy after 1941. In the event of such an action, the company has not

been led to change its position to its detriment by reason of the prior action.

In the judgment of the lower court from which the present appeal is taken, the circuit judge strongly relied upon the case of *Pacific Mutual Life Ins. Co. of California v. Rhame*, D. C. S. C., 32 F. Supp., 59. The *Rhame case* was brought originally in the state court for the recovery of damages for the alleged fraudulent breach of a life insurance policy containing the usual provisions for total and permanent disability; and upon trial resulted in a verdict in favor of the plaintiff for actual and punitive damages. Upon appeal to this court the judgment was affirmed. *Rhame v. Pacific Mut. Life Ins. Co. of California*, 179 S. C., 297, 184 S. E., 685. Later, the Pacific Mutual Life Insurance Company brought suit in the United States Court for the Eastern District of South Carolina seeking a declaratory judgment upon the ground that the action bronght by Rhame in the state court constituted an election which barred any other action for disability benefits under the insurance contract. The Federal Court held that in his action in the state court, Rhame treated the contract as being at an end, and that having made his election to sue for fraudulent breach, such election was irrevocable.

An examination of the complaint in the *Rhame case* shows beyond doubt that he had rescinded the contract, and that he sought to recover damages as upon a total breach, The situation is different here, and the decision of the Federal Court is not applicable.

It follows from what we have said that the action by Arthur Smith, the injured, was not based upon the disaffirmance of his insurance policy providing for disability benefits, and that a second action for subsequently accruing benefits would not be barred.

Judgment reversed.

Mr. Chief Justice Baker and Messrs. Associate Justices Stukes, Taylor and Oxner concur.